MARGARET CROSBY, APPELLANT, v. CHRISTOPHER C. CROSBY ET AL., APPELLEES.

274 N. W. 592

FILED JULY 22, 1937.   No. 30059.

*Anson H. Bigelow,* for appellant.

*Samuel L. Winters,* contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY and PAINE, JJ., and SPEAR and KROGER, District Judges.

EBERLY, J.

This is an action in equity wherein Margaret Crosby is plaintiff and appellant, and Christopher C. Crosby and Margaret Crosby, husband and wife, are defendants. From a judgment in favor of the defendants, plaintiff appeals.

This litigation arises out of the following events: Philip Crosby departed this life leaving an estate of which lots 9 and 10, block 29, Corrigan Place, First Addition to the city of South Omaha, Nebraska, constituted a part. He was survived by a brother, Christopher C. Crosby, and Margaret Crosby, Mae Estman (née Crosby), Elizabeth Johnson (née Crosby), sisters, and the descendants of a sister that had predeceased him. At the commencement of this suit in equity, according to the record, the administration of the estate of Philip Crosby had been completed, the final report of same had been approved, and the estate settled. The real estate described had vested in the parties above enumerated. It appears that negotiations were had between the survivors for the sale of the above real estate to Christopher C. Crosby, the exact nature and effect of which was one of the issues for determination in this litigation. Margaret Crosby had acquired the interest of her sisters and her deceased sister's descendants in the two lots described, and was then the owner of an undivided four-fifths thereof. Pursuant to negotiations had with her brother Christopher, she conveyed her four-fifths interest to him by a warranty deed executed on or about December 7, 1935. At this time he gave her a check for $500. As to the application of this $500, as made by agreement of parties, Margaret Crosby's testimony is, viz.:

"Q. Was the deed drawn up in Mr. Fitzgerald's office? A. Yes. Q. Go ahead and tell what happened then. A. Then he paid $430; that would be $430 on this interest in the property, and $70—that was his share—he said he would help pay for this abstract; the abstract was lost and we had to get a new abstract, and the special back taxes—that would make his share $70. Q. The special back taxes were how much? A. $313 or $314; the abstract was $37.50.

Q. It made all together what? A. About $70. Q. Well, how much all together? A. $350, I think—I don't know. Q. $70 for each fifth share; is that it? A. Yes. Q. $350? A. Yes. Q. Was this matter of taxes talked over before this sale of the property? A. Yes; it was talked over, and he said he was willing to go in it if we divided it amongst all of us, and we said that was because we didn't know of the special taxes or we would have paid it long ago, because we always paid our taxes. Q. What did he offer to do with reference to those taxes? A. Well, he offered to divide, and he did. Q. That is, he did what? A. He took that $70 for his share. Q. And how much did he pay you on that occasion? A. Well, $430. Q. And then the $70? A. Yes; for the taxes; that made a total of $500. Q. The check that he gave you was for— A. $500; yes. Q. Now, was there any talk at any time that he was not to pay the $70? A. No; no talk." On this particular subject Christopher Crosby testified:

"Q. When did the question of taxes come up? A. After they got the abstract then they found out the taxes, and that is the first time the taxes came up, after I got the deed. Q. Then what did you do? A. I told them I already knowed a couple of days before, I went down to Fitzgerald and he already told me there was some back taxes. Q. I am not asking you that: What did you do about the back taxes? A. Why, they took it out of the $500; I was willing to see it through; they told me I had a share in the property and was going to charge the taxes up, and I said all right."

It is obvious that the undisputed testimony of all parties is that $70 of Christopher's $500 was, by mutual consent, applied in payment of his share of the unpaid taxes and special assessments, which were unpaid liens on the premises, and his share of the cost of the abstract.

Thereafter, due to the disagreement of the parties as to the exact amount of purchase price, Margaret claiming that $1,000 was the price of the four-fifths share owned by her, and Christopher contending that the $1,000 agreed upon was for the premises as an entirety, this litigation followed.

Margaret, in her petition in equity, set forth her claims as to the terms of the contract; alleged that the defendant Christopher Crosby "paid to her a part only of the said consideration, to wit, the sum of $430;" offered to refund the same; and prayed for a cancelation of the deed of December 7, 1935, and for an order decreeing that defendants hold title to said property as trustees for the plaintiff as to a four-fifths interest therein, and for other relief.

To this petition the defendants filed their answer, in which were set forth their respective claims as to the actual terms incorporated in the agreement for the sale of the real estate between plaintiff and defendants; contained a general denial of the allegations of plaintiff's petition; and alleged the payment of the sum of $500 by the defendant on the agreed purchase price.

Upon the issues thus formed a trial was had, at the close of which a decree was entered, in substance, finding for the defendants; finding that they had paid the sum of $500 to plaintiff upon the purchase price, and determining the amount remaining unpaid to be the sum of $300, with interest from December 11, 1935, at 6 per cent. per annum.

A careful consideration of the record *de novo* leads to the conclusion that the finding of the trial court as to the terms of the contract of sale of the real estate is amply supported by the evidence, and we accept the same as correct. However, it also appears that the trial court erred in finding that the amount of the payment which defendants were entitled to have credited on the purchase price was $500. Under the undisputed evidence, hereinbefore set out, such payment amounted to the sum of $430 only. The judgment of the district court is reversed and the cause remanded, with directions to enter judgment in favor of the plaintiff for the sum of $370 with interest at 6 per cent. from December 11, 1935; otherwise, judgment to be in accordance with the decree entered. It is further ordered that each party pay their own costs in this court.

REVERSED.